## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| FRANK MARCUM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, Plaintiff Frank Marcum, and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 502(e)).

1

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq*., and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the aforementioned avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES AND AFFILIATES

6. Plaintiff, Frank Marcum (hereinafter "Plaintiff" or "Mr. Marcum"), is currently a resident of Indianola, Iowa.

7. Plaintiff's employer, Luxottica Retail of North America, Inc., is a company that designs, manufactures, and distributes fashion, luxury, sports, and performance eyewear, is headquartered in Mason, Ohio, and does business across the U.S., including the southeast region of the U.S., and has offices in this region.

8. The Group Long Term Disability Plan for Employees of Luxottica Retail of North America Inc., is and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

9. Luxottica Retail of North America, Inc., is the named Plan Sponsor and Plan Administrator of the Group Long Term Disability Plan for Employees of Luxottica Retail of North America, Inc.

10. Aetna Life Insurance Company (hereinafter "Aetna") initially managed the long-term disability Plan.

11. On or about October 23, 2017, Hartford Life and Accident Insurance Company acquired Aetna's group disability insurance business.

12. Accordingly, Hartford Life and Accident Insurance Company is the party obligated to pay benefits and to determine eligibility for benefits under the Plan.

13. Defendant Hartford Life and Accident Insurance Company (hereinafter "Hartford") was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan and was the underwriter for a policy of insurance that fully insured the Plan.

14. Hartford is an insurance company authorized to transact the business of insurance in this State and may be served with process by and through the Commissioner of the Tennessee Department of Commerce and Insurance, 500

3

James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1121.

## FACTS

15. Luxottica Retail of North America, Inc., is a company that designs, manufactures, and distributes fashion, luxury, sports, and performance eyewear.

16. Luxottica Retail of North America, Inc., sponsors various employee benefit plans for its employees, including the Group Long Term Disability Plan for Employees of Luxottica Retail of North America, Inc. (hereinafter "Plan").

17. The Plan was insured by Group Policy Number GP-700976, issued by Aetna.

18. Aetna is the underwriter for Group Policy Number GP-700976.

19. Hartford is the party obligated to pay benefits and to determine eligibility for benefits under the Plan.

20. The Plan is fully insured by Aetna under Group Policy Number GP-700976.

21. Because Hartford acquired Aetna's group disability insurance business on or about October 23, 2017, Hartford is the party obligated to pay benefits and to determine eligibility for benefits under the Plan.

22. Plaintiff was a participant in the Plan by virtue of his employment with Luxottica Retail of North America, Inc.

23. Plaintiff worked for Luxottica Retail of North America, Inc., as a Store Manager.

4

24. The Plan provides eligible employees with disability income protection as defined by the Plan.

25. The Plan is governed by ERISA.

26. Plaintiff began working for Luxottica Retail of North America, Inc., on June 1, 2004.

27. Plaintiff's last day of work at Luxottica Retail of North America, Inc., was March 23, 2007.

28. The Plaintiff ceased work on March 24, 2007, due to a disability while covered under the Plan.

29. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

30. The Plaintiff timely filed an application for benefits under the Plan, was subsequently denied benefits, Plaintiff timely appealed, and Hartford issued its final denial on October 24, 2023.

31. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

32. Having submitted his appeal, and as confirmed by Hartford, Plaintiff exhausted his administrative remedies.

33. Based on the terms of the insurance policy, Plaintiff's complaint is timely

and is not otherwise time barred.

34. The relevant long-term disability policy in this matter initially defines disability as an inability to perform the material duties of Plaintiff's own occupation, and then, after 24 months of eligibility, the policy defines total disability as an inability to work at any reasonable occupation. "Reasonable occupation" is defined as any gainful activity for which Plaintiff is, or may reasonably become, fitted by education, training, or experience and which results in, or can be expected to result in, an income of more than 80% of his adjusted pre-disability earnings.

35. Plaintiff is entitled to long term disability benefits as he has met the long-term disability Plan's requirements, and his disability continues to prevent him from performing the either the material duties of his own occupation or any occupation as defined in the policy.

36. The policy does not require objective medical evidence for proof of claim.

37. If disabled pursuant to the terms of the policy, Plaintiff, who was paid long-term disability benefits from September 20, 2007, to March 31, 2022, is entitled to a monthly gross long-term disability benefit of $1,939.94, offset by a monthly Social Security disability benefit of $908.00, for a net monthly long-term disability benefit of $1,031.94 from April 1, 2022, to February 28, 2030. Accordingly, Plaintiff is owed $20,434.08 in back benefits,

6

$66,979.06 in future benefits (using 5.0% to discount to net present value), with no overpayment owed, for a total long-term disability benefit of $87,413.14.

38. Evidence submitted by Plaintiff to Hartford supporting his disability includes, *inter alia*, the following: Mr. Marcum suffers from necrotizing myopathy, hepatitis C with cirrhosis, status post SVR with Incivek, ribavirin and interferon, insulin requiring diabetes mellitus with episodes of diabetic ketoacidosis, esophageal varices, dysphagia, 3-vessel coronary artery disease, hyperglycemia, hyperlipidemia, hypertension, migraine headaches, chronic pain syndrome, C-6 radiculopathy, cervical facet joint syndrome, cervicalgia, bilateral occipital neuralgia, right rotator cuff tear, and subacromial bursitis of bilateral shoulders. Surgical history includes lumbar laminectomy for herniated disk repair, cholecystectomy, muscle biopsy, heart Cath stent placement, and left elbow surgery.

39. Plaintiff's medication regimen includes, *inter alia*, the following: Alprazolam, Amlodipine, Atorvastatin, Dexcom G6 receiver, sensor, transmitter (diabetes), Furosemide, Hydrocodone-acetaminophen, Ibuprofen (800 mg twice daily), Lantus SoloStar, Metoclopramide HCL, Novolog, Ondansetron, Pantoprazole, and Pregabalin.

40. On May 24, 2023, David Harrison, D.O., Plaintiff's longtime treating

physician for 16 years, authored a medical source statement. Dr. Harrison indicated his patient had the following limitations and restrictions: can sit 2 hours out of an 8-hour day for 1 hour at a time; stand or walk 2 hours out of an 8-hour day for 10 minutes at a time; can frequently lift/carry 1-10 pounds and infrequently 11-20 pounds but nothing heavier; can infrequently bend at waist, reach above shoulders, stand on a hard surface, and can occasionally use his hands for fine manipulation; needs to elevate his lower extremities for at least 1-hour of time during a normal workday; requires at least 30-minutes of bed rest during a normal workday; has problems with stamina and endurance such that he needs to take more rest breaks than typically allowed in competitive employment; suffers from severe pain and fatigue; the medications taken by the patient causes lapses in concentration and focus; he would be off task more than 10% of any given workday; he would be chronically absent from work at least 2 days during any given work month; and would not be a reliable and dependable employee in a normal work environment.

41. On September 13, 2023, Dr. Harrison authored an opinion letter. Dr. Harrison indicated the following: "I'm Frank Marcum's primary care physician and have been for about 16 years. On March 9, 2022, I signed a March 7, 2022, letter from Hartford. By my signature on that letter, I agreed

that Mr. Marcum could function to some degree in a 40-hour work week with certain limitations. On May 24, 2023, I authored a medical source statement that indicated Mr. Marcum had restrictions and limitations that made it difficult for him to work in any full-time competitive work environment."

42. Dr. Harrison continued: "Hartford sent me that March 7, 2022, letter along with a package of materials which I think came from Mr. Marcum's Facebook page. If I remember correctly, these included photos, some sort of transcript, and a bunch of messages. They had to do with Mr. Marcum kayaking. He was carrying or at least holding a kayak in one photo and out on a lake in a kayak in another. I was not happy with Mr. Marcum. It was dangerous for him to do an activity like that. I told this to Mr. Marcum. He explained to me that he only kayaked for a short time, he was initially excited about it, but his body couldn't keep up with his enthusiasm and he had to stop. I still think it was a poor choice showing poor judgment and was dangerous for someone in his condition. But just because a person makes a poor decision doesn't mean he is lying about his disability."

43. Dr. Harrison continued: "Form my own clinical observations and treatment of Mr. Marcum's pain and fatigue over the last 10 years or so, I don't think he's a reliable and dependable employee. I don't think he ever will be. He might be able to hold or carry a kayak for some period of time, but his

physical condition is far too compromised for him to participate in any activity like that for very long.  He's still going to require extra rest breaks at least 3 times a week.  He's still going to be off task more than 10% of any given workday.  And he's still going to be absent from work for 2 or more days a month."

44. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D. Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D. Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D. Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D. Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D. Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D. Mich., 2013).

45. An ability to perform the material and substantial duties of any full-time occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services,*

*Inc.*, 2005 WL 5369158, \*6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

46. None of Mr. Marcum's reported activities, or activities attributed to him, were inconsistent with his disability. Additionally, consideration must be given regarding the modifications and help a plaintiff requires for activities. *Hoover v. Berryhill*, 2017 WL 5494565, at \*4 (N.D. Ind. Nov. 16, 2017); *Diedrich v. Berryhill*, 874 F.3d 634, 642-643 (9th Cir. 2017 (court improperly took note of certain daily activities that plaintiff could perform, such as bathing, cooking, taking care of her cat, chores around the house, shopping, paying bills, and using a checkbook, but ignored other evidence showing the difficulties plaintiff faced in everyday life); *Brown v. Commissioner Social Security Administration*, 873 F.3d 251, 269-270 (4th Cir. 2017) (court noted various of plaintiff's activities such as cooking, driving, doing laundry, collecting coins, attending church and shopping, but failed to acknowledge the limited extent of those activities as described by the plaintiff or explain how those activities showed that he could sustain a full-time job); *Herrold v. Colvin*, 2015 WL 1243293, at \*6 (N.D. Ind. Mar. 17, 2015) (7th Circuit repeatedly criticizes credibility determinations based on a plaintiff's ability to take care of her personal hygiene, children, or household chores) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); and *Blow v. Astrue*, 2012

11

WL 3233621, at *9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores and any activities the plaintiff could perform were at a slower pace with frequent breaks).

47. Hartford relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on his functionality without addressing his work reliability, consistency, substantial capacity, and steady attendance and dismissed his subjective complaints.

48. There are no challenges to Plaintiff's credibility. In other words, Plaintiff's treating physicians have directly addressed his reliability, consistency, substantial capacity, psychological stability, and steady attendance. Hartford's medical consultants have failed to substantively account for, much less address, any of these issues. Accordingly, Plaintiff has satisfied his obligations of providing proof of his disability under the policy.

49. Hartford's medical consultants ignored and dismissed Plaintiff's subjective complaints. Ignoring evidence of pain or other disabling conditions because it is subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).

50. There is no requirement in the instant policy that Plaintiff provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, Hartford does not have the authority to require it. *See*, *e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013).

51. The instant policy allows for independent medical examinations and functional capacity examinations. Hartford's investigation consisted of only file reviews by medical consultants. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration, or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

52. Hartford's policy contained an "offset" provision that required Plaintiff to apply to the Social Security Administration for benefits. If he won his Social

Security case, then not only are future benefits from Hartford reduced by the amount of the monthly check from Social Security, but to the extent that any back benefits from Social Security overlap with benefits Hartford has already paid, Hartford gets to recoup these benefits from the Plaintiff. Plaintiff applied for Social Security disability benefits which were subsequently granted.

53. The Plaintiff has now exhausted his required administrative remedies for his long-term disability benefits under the Plan pursuant to ERISA or such administrative remedies are deemed exhausted and/or his long-term disability benefits are deemed denied.

54. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

55. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

56. Defendant Hartford was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

57. Defendant Hartford allowed its concern over its own funds to influence its decision-making.

14

58. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

59. Defendants' administrative process did not provide Plaintiff with a full and fair review; by way of example, its denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Defendants required in order to approve his continuing benefits.

60. The disability insurance policy does *not* provide Hartford with discretionary authority.

61. In the alternative, relevant state law bans any such clause purporting to confer Hartford with discretionary authority.

62. At all times relative hereto, Hartford has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Hartford's own assets with each payment depleting those same assets.

63. Hartford has a history of biased claims administration. For example, in a case entitled *Julie Jacoby v. Hartford Life and Accident Insurance Company*, 07-cv-4627 (S.D. N.Y.), the court put down an order indicating Hartford's discovery "responses are a paradigm of discovery abuse" and required Hartford produce its BMS Claims Manual and SIU Reference Manual along with other documents without any protective order at all such that these

15

documents are now properly part of the public domain and have been utilized in other litigation. These materials evidence a specific intent on Hartford's part to consider the monetary value of a claim in its evaluation process. This is an intent antithetical to its role as fiduciary to its disabled constituents. In one of the documents a Hartford employee admonishes another to try to do something else on a claim before Hartford has to pay 30 years of benefits. In another document a member of the medical team is praised for finding that a disability claimant could do some type of work in a higher percentage of cases than her peer group.

64. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Hartford is an ERISA fiduciary.

65. Hartford, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009).

66. Hartford failed to satisfy its duties under ERISA as specified in paragraph 65 of this complaint.

16

67. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

68. Hartford failed to satisfy its duties under ERISA as specified in paragraph 67 of this complaint.

69. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination.

70. Hartford failed to satisfy its duties under ERISA as specified in paragraph 69 of this complaint.

71. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and resolve undeterminable issues in its insured's favor.

72. Hartford failed to satisfy its duties under ERISA as specified in paragraph 71 of this complaint.

73. Under ERISA, a fiduciary has the obligation to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective, and thorough evaluation of its insured's claims for disability benefits.

74. Hartford failed to satisfy its duties under ERISA as specified in paragraph 73 of this complaint.

75. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

76. Hartford failed to satisfy its duties under ERISA as specified in paragraph 75 of this complaint.

77. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

78. Hartford failed to satisfy its duties under ERISA as specified in paragraph 77 of this complaint.

79. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

80. Hartford failed to satisfy its duties under ERISA as specified in paragraph 79 of this complaint.

81. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

82. Hartford failed to satisfy its duties under ERISA as specified in paragraph 81 of this complaint.

83. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

84. Hartford failed to satisfy its duties under ERISA as specified in paragraph 83 of this complaint.

85. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

86. Hartford failed to satisfy its duties under ERISA as specified in paragraph 85 of this complaint.

87. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

88. Hartford failed to satisfy its duties under ERISA as specified in paragraph 87 of this complaint.

## CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 88 as if fully stated herein and says further that:

89. Under the terms of the Plan, Defendant agreed to provide Plaintiff with disability benefits in the event that Plaintiff became disabled and met the other requirements of the Plan.

90. Plaintiff has satisfied all of the requirements of the Plan for approval and receipt of a disability benefit.

91. Defendant failed to provide benefits due under the terms of the Plan and these denials of benefits to Plaintiff constitute breaches of the Plan.

92. The decisions to deny these benefits were wrong under the terms of the Plan.

93. The decisions to deny benefits and decision-making processes were arbitrary and capricious.

94. The decisions to deny benefits were not supported by substantial evidence in the record.

95. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

96. The appellate procedures did not provide the Plaintiff a full and fair review.

97. As ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

98. The Defendant violated the fiduciary duties owed to the Plaintiff.

99. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

100. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court grant him the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;

2. Damages in the amount equal to the disability income benefits to which he was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and post judgment interest;

4. An Order requiring the Defendant to pay continuing benefits into the future, so long as Plaintiff remains disabled under the terms of the Plan, as well as any other collateral benefits to which he might be entitled on the basis of being disabled under the Plan, in the future so long as Plaintiff remains disabled under the terms of the Plan;

5. Plaintiff's reasonable attorney fees and costs; and,

6. Such other relief as this Court deems just and proper.

Dated this 7th day of November, 2023.

By:  */s/D. Seth Holliday*
D. Seth Holliday
TN Bar No.: 023136
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*